## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 16 2019, 6:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew Koressel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tracy A. Thomas,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 16, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2234<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Frances C. Gull, Judge<br><br>Trial Court Cause No.<br>02D05-1704-F5-96 |

**Bradford, Judge.**

# Case Summary

On the evening of April 7, 2017, Fort Wayne Police Detectives (collectively, "the Detectives") were conducting surveillance on Tracy Thomas as part of an investigation into a reported domestic disturbance involving a firearm. During the course of their surveillance, the Detectives observed Thomas committing numerous traffic infractions and initiated a traffic stop. Thomas did not stop his vehicle immediately and when he did stop, he failed to follow the Detectives' directions and engaged in a physical struggle with the Detectives. During this struggle, Thomas bit one of the Detectives, causing her to suffer injury and pain. Thomas was convicted of Level 5 felony battery on a public safety official following a jury trial. He contends on appeal that the evidence is insufficient to sustain his conviction. We affirm.

# Facts and Procedural History

On the evening of April 7, 2017, Fort Wayne Police Detective Sergeant Gary Hensler was conducting surveillance on Thomas as part of an investigation into a domestic incident that involved the use of a firearm. In light of information learned during the ongoing investigation, Detective Sergeant Hensler and Detectives Matthew Foote and Shannon Hughes initiated a traffic stop after observing Thomas commit numerous traffic infractions. Given the nature of the ongoing investigation, the Detectives decided to conduct "a modified felony stop," which included the Detectives taking additional safety precautions. Tr. Vol. II p. 85.

[3]     Thomas failed to immediately yield to the Detectives' flashing emergency lights and sirens. Once he stopped and exited his vehicle, Thomas "refused to turn away from [the Detectives] and he refused to walk backwards to the sound of [their] voice[s] which were the commands." Tr. Vol. II p. 134. He also disobeyed the Detectives' orders to take his hands out of his pockets. Thomas's actions caused the Detectives to be concerned about whether he was reaching for a weapon hidden on his person. Thomas, who was only a few feet away from his vehicle, also kept looking back toward his vehicle. He displayed "indecisiveness like he was trying to decide whether to get back in the car, not to listen[.]" Tr. Vol. II p. 89. Because the Detectives were "unsure what his intentions were at that point[,]" tr. vol. II p. 89, they decided to treat the stop as a "high risk traffic stop." Tr. Vol. II p. 133.

[4]     As they approached Thomas, Detective Sergeant Hensler and Detective Hughes drew their weapons, pointing them towards the ground and away from Thomas. Detective Foote, armed with a "less than lethal taser," followed close behind. Tr. Vol. II p. 135. Thomas initially ignored the Detectives' orders to get down on the ground but eventually partially complied. He then began struggling with the Detectives, flailing his arms and attempting to get up off the ground. Detective Foote slapped Thomas with the back of his hand in an attempt to get him to comply with the Detective's orders to stop resisting. Thomas continued to struggle with Detective Foote, who delivered a "knee strike" to Thomas's body in another unsuccessful attempt to gain Thomas's compliance. Tr. Vol. II pp. 136 – 37. Thomas continued to resist and ignored

numerous orders to put his hands behind his back. Detective Sergeant Hensler "tased [Thomas], that was ineffective." Tr. Vol. II p. 137.

[5] Detective Hughes eventually managed to straddle Thomas and gain control of one of his arms. As she attempted to place Thomas in handcuffs, Thomas threw her "off of his back" and "savagely" bit her arm. Tr. Vol. II pp. 119, 137. Detective Foote placed his arm against the right side of Thomas's neck in an effort to incapacitate him. Detective Foote released the pressure after pulling Thomas's mouth away from Detective Hughes.

[6] Thomas then attempted to strike Detective Foote with a closed fist. Detective Foote responded by "delivering several closed hand strikes to [Thomas's] face and head area." Tr. Vol. II p. 137. Thomas continued to struggle. Eventually, Detective Foote managed to pin Thomas under his knee and to incapacitate Thomas by delivering "a one to two (2) second burst" of chemical spray in Thomas's eyes. Tr. Vol. II p. 138. Thomas finally stopped resisting and the Detectives were able to place him in restraints. Thomas's bite on Detective Hughes's arm, which was described by Detective Hughes as "[v]ery painful," resulted in immediate bruising and permanent scarring. Tr. Vol. II p. 119. A handgun was subsequently recovered from underneath the driver's seat of Thomas's vehicle.

[7] On April 13, 2017, the State charged Thomas with Level 5 felony battery on a public service official, Level 5 felony carrying a handgun without a license, two counts of Level 6 felony resisting law enforcement, and Class A misdemeanor

possession of a firearm by a domestic batterer. Following a two-day trial, the jury returned a guilty verdict on the battery charge but "hung" on the remaining counts. Appellant's App. Vol. II p. 186. The remaining counts were subsequently dismissed pursuant to a plea agreement entered into by the parties. As for the Level 5 battery conviction, the trial court sentenced Thomas to a five-year term of imprisonment.

# Discussion and Decision

[8] Thomas contends that the evidence is insufficient to sustain his conviction for Level 5 felony battery on a public safety official.

> We do not reweigh evidence or reassess the credibility of witnesses when reviewing a conviction for the sufficiency of the evidence. We view all evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction, and will affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.

*Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (internal citation and quotation omitted). A person commits Level 5 felony battery on a public safety official when he knowingly or intentionally "touches another person in a rude, insolent, or angry manner" and the touching "results in bodily injury to … a public safety official while the official is engaged in the official's official duties." Ind. Code § 35-42-2-1(c), (g). A "public safety official" includes "a law enforcement officer." Ind. Code § 35-42-2-1(a)(1).

[9]     In challenging his conviction, Thomas argues that the State failed to rebut his self-defense claim.

> A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. In order to prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm.

*Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002) (internal citations omitted). A person, however, is not justified in using force against a public servant if "the person reasonably believes the public servant is: (A) acting lawfully; or (B) engaged in the lawful execution of the public servant's official duties." Ind. Code § 35-41-3-2(j)(4).

> When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt.

*Wilson*, 770 N.E.2d at 800–01 (internal citations omitted). "The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same standard for any sufficiency of the evidence claim." *Id*. at 801.

[10]    In arguing that the State failed to rebut his self-defense claim, Thomas asserts that he was justified in defending himself because the Detectives cannot be said

to have been engaged in the lawful execution of their duties given that they used unreasonable force in their attempts to detain him. We disagree. Testimony from each of the Detectives indicates that Thomas was repeatedly non-compliant with their orders. While the Detectives admittedly used force in their attempts to restrain Thomas, one could reasonably infer from the record that the amount of force used by the Detectives directly correlated to the nature of Thomas's resistance, *i.e.*, that the nature of the force used by the Detectives escalated in proportion to the length and nature of Thomas's resistance. Once Thomas stopped resisting, the Detectives refrained from using any additional force.

[11] The record supports the jury's conclusions that the Detectives' use of force was reasonable, the Detectives were acting in the lawful execution of their duties when Thomas bit Detective Hughes, and Thomas knew the Detectives were acting lawfully in executing their duties. It therefore supports the jury's determination that the State rebutted Thomas's self-defense claim. Thomas's argument to the contrary amounts to nothing more than an invitation for this court to reweigh the evidence, which we will not do. *See Walker*, 998 N.E.2d at 726.

[12] The judgment of the trial court is affirmed.

Crone, J., and Tavitas, J., concur.